All right, please be seated, everyone. Good morning. I'll be calling the cases in the order that they're listed on the calendar, but before we get started, Judge Hawkins and I would like to thank and welcome Judge Seiler from the Sixth Circuit. Thank you for coming to lend us your talents this week. You're quite welcome. All right. The first case on calendar for argument is U.S. v. Stratos. Good morning, Your Honors. Tony Farmani on behalf of Mr. Stratos. I'm going to begin talking about why the sentence in this case is substantively unreasonable and then try to work back and explain the other enhancements. Mr. Stratos was arrested when he was 45 years old, Your Honor, and his crime at the time, the indictment against him was the dealings that he had with Ms. Nicole Murphy. Ms. Nicole Murphy and Mr. Stratos had engaged into a business partnership, Your Honor. They had created a revocable trust. Each one of those individuals had an opportunity to withdraw money to use that money. So it isn't like Mr. Stratos was defrauding someone by giving them false hopes and pretenses to a group of people who had absolutely no control over their money. So you look at that conduct in and of itself, Your Honor, that conduct, although I'm not going to sit here and try to justify it, I don't think he deserves as much sentence that he's gotten just for that alone. And then you talk about the Facebook fraud, which is when he goes and deals with this other gentleman, Mr. Ken Burns, and Mr. Ken Burns is a financial advisor. He's an educated human being. He knows what's going on. He nevertheless trusts Mr. Stratos. Mr. Stratos is doing what he is being hired to do, essentially, is to get to connect people with one another. It almost sounds like you're contesting that he perpetrated a massive fraud. That's not really the issue, is it? Your Honor, I'm not going to, you know, it's hard to swallow what happened here, because there was absolutely no defense presented on behalf of Mr. Stratos. He pled guilty. He pled guilty to one scheme. That's correct, Your Honor. And he was convicted of others by a jury. Yes, Your Honor. This is pure sentencing, correct? Pure sentencing. By way of introduction, Your Honor, I didn't do the opening brief, so I didn't have an opportunity to perhaps raise issues that I personally would have raised. But I think that's something that could be raised on a Section 2255 motion. But just take the trial by itself, Your Honor. That trial was not free of constitutional error. We had a trial. He had a trial where the ---- But we're here on a sentencing appeal. Yes, Your Honor. But nothing in this appeal has to do with anything about the factual guilt findings, either by plea or conviction, correct? You're simply here saying that in two or three ways, the judge erred in giving the quantum of sentence that he did, correct? That's correct, Your Honor. That's all we're here about. That's all we're here. The reason I raised the trial, Your Honor, is because you said that Your Honor indicated that he was found guilty. It is true. He was found guilty. But at the same time, taking into consideration he never had a real opportunity to present a defense which would have been his testimony. There's nothing we can do about that. That's correct, Your Honor. At this stage, you're absolutely correct. There's nothing we can do at this stage. What do you think a reasonable sentence would be in this case? Your Honor, a reasonable sentence in this case would have been if you shave off the four-point enhancement for the substantial financial harm, and then you give him 14 years, which would be the high end, 168 months. What was the loss? The loss, 11.25 for the Facebook fraud and somewhere between 10 and 12 million or 11 million, 10 and 12 if you take into jury for Nicole Murphy. But we're talking 20 million. Twenty million. But the loss, we're talking about the substantial financial hardship, which would be he already getting 20 points for that. I'm already conceding that, Your Honor. What we're trying to say is the four points that he got. So the four-point enhancement, let's talk about that. Because the Court referenced specifically the fact that he had sat through the trial, had heard ample evidence in this case on the losses, and then he referenced the victim impact statements. And some of them were quite powerful, talking about the fact that they had to delay their retirement and that it caused them substantial financial hardship. So where's the error in applying that four-level enhancement? Well, the judge relied on Ken Burns' testimony in figuring it out, because what was at sentencing, what was being challenged was the – whether the victims were foreseeable to Mr. Stratis, because Mr. Stratis never actually met or interacted with these victims. So the judge found that Ken Burns' testimony was credible in the sense that it was foreseeable to Mr. Stratis. These victims would have been foreseeable to Mr. Stratis. But the victims' statements, Your Honor, were never subject to cross-examination. What was subject to cross-examination, who was subject to cross-examination was Ken Burns. And what he says is that my clients are these wealthy individuals, these landowners, these people who have a whole bunch of money, majority of his clients. Now, there is no analysis as to if you – Well, let me look at the – what the judge said, because I don't think it was just the – I don't think it was just the Burns testimony alone. The court said he's telling Burns how to deal with the investors, that he'd already cheated. So the testimony that was heard at trial makes it clear the harm to those investors was reasonably foreseeable. And I think he also referenced, like, some – I think they were jailhouse calls as well. Are you disputing the – are you saying that there's insufficient evidence that it was reasonably foreseeable? Or is your argument different? No. The argument is, let's assume for a moment it was foreseeable. These victims were foreseeable victims to Mr. Stratis. The question becomes, did they suffer substantial harm to warrant the four-level enhancement, substantial financial hardship? And I don't think – see, these victims, their statements were never subject to cross-examination. They said, oh, I lost $50,000 of, you know, money that I would have put away – that I was going to put away for my granddaughter to go to college. But how much money did this person have? Because $50,000 could be – you know, someone who's got $5 million may not be significantly – you know, it may not be a substantial harm. Was there a pre-sentence report in this case? There was, Your Honor. Was it made available to your client? It was, Your Honor. Did he dispute any portion of it? What he disputed with respect to the victims, Your Honor, was the foreseeability, the number of the victims, Your Honor. Yes, with respect to that element. He did dispute other factors, including the substantiveness of the sentence and the sophistication, but he – but among others. But the one that I think is the key here, Your Honor, is that whether or not you could say based on the record that these victims suffered substantial financial harm, when the – when the gentleman, when the person who knew these victims best, which was Ken Burns, comes and testifies in court, says these were victims who had lots of money. These were people who had lots of money. These weren't just your general public, you know, where somebody's taking their IRA account and cashing it out and saying, I'm going to go ahead and invest in Facebook. You know, these were people who had substantial sums of money, according to Mr. Burns, who the judge credited, by the way. So that's the – that's the troubling factor here, Your Honor, because we don't have any other than just pure handwritten statements by these people who lost money in the Facebook fraud. We don't have any idea of what percentage of their entire income or what percentage of their savings was that money that they lost. Were you counsel at the time of sentencing? Pardon me, Your Honor? Were you counsel when he was sentenced? Your Honor, unfortunately, I was not counsel at trial or at sentencing or even on the appeal until I came in after the brief was written. Well, did anyone object because it was not shown what the overall wealth of these victims was? They did not, Your Honor. They didn't object on that basis. The only objection they made with respect to the victims was their foreseeability because Mr. Stratus never met any of these victims, never interacted with them. He only interacted with Ken Burns, who one of the people that Ken Burns brought to invest in the Facebook was a hedge fund. So, you know, he never knew any of these people, Mr. Stratus. So there was a question as to whether or not it was even foreseeable for him to know that there was going to be 50-plus victims who invested money in the Facebook scheme. You're down to less than a minute. Would you like to save that? That's what I was going to say, Your Honor. If I may, save the remainder of my time. Certainly. Thank you. Good morning. May it please the Court. I'm Camille Skipper. I represent the United States. The 262-month sentence imposed in this case was a guideline sentence, and it is the case that it was indeed substantively reasonable. Since that's where defense counsel began, that's where I will begin as well. The fraud comes from two very brazen schemes. And what's important to realize about this case is that while Mr. Stratus was in jail, having been detained pursuant to an arrest by the FBI in the Murphy scheme, he was continuing the Facebook scheme. This individual is particularly dangerous because at the time that he was conducting the Facebook scheme, he was using, under an alias, a reputable law firm. Using this alias, he had actually arranged telephone calls with Facebook executives. He made this scheme look particularly legitimate. Now, while it is true that the $11 million fraud scheme related to Ms. Murphy had a different modus operandi, he was not in a business relationship with her, but acting as her financial advisor. He managed to dissipate her assets in less than six months. So the idea that Mr. Stratus, as a 40-some-year-old man, was somehow unfairly sentenced to 262 months simply does not — the record does not bear that out. I would move then to the substantial hardship argument. Judge Siler, you are correct. No objection was made to whether or not the victims in this case had experienced a substantial financial hardship. Indeed, in the briefing and at argument, defense counsel conceded that the victims were financially ruined and that the scheme and the Facebook scheme had caused the undoing of their entire financial lives. This is at ER 54. Was one of the victims of the Facebook stock scam, if we can call it that, a hedge fund, as counsel suggests? Your Honor, the — according to the list in Attachment A to the PSR, there were a number of trusts. Can we start with a yes or no? I don't believe it was a hedge fund, Your Honor. Okay. Tell us. Tell us. I believe that these were — these were trusts, a number of them, as well as individuals. There's a total of 56 victims listed there. If one of them is a hedge fund, however, it makes no difference here, because the number of individuals who claimed financial — substantial financial hardship exceeds five. You could start with Nicole Murphy, who tested — who actually spoke at the sentencing hearing about how Mr. Stratus had ruined her life. She had lost cars, a home, the ability to support her parents. In the scheme, her mother actually lost her home, and her credit was severely damaged. Is the government's argument, if there's five or more victims, it doesn't matter what the particular financial hardship was to each of them? No, Your Honor. There actually needs to be a substantial financial hardship to each one of those five or more. And that's the record that the district court had before it. And is it enough for a district court to simply accept a victim saying, this caused me substantial harm, financial harm? No, that would be a conclusory statement. And the court had more here. The victims actually identified the nature of the harms that they suffered. In addition to Ms. Murphy, for example, there was victim Seifert, who lost $100,000 in the scheme. He indicated in his statement that he was actually going to have to put off retirement. This is one of the non-exhaustive lists in the application notes as an example of a substantial financial harm. Victim Negratis, who lost $150,000 in the scheme, also identified the fact that he was going to have to delay retirement. Other victims, like victim Holmwood, who lost $110,000, victim Cronish, who lost $57,000, victim Lewis, who lost $73,000, they identified the fact that this had depleted or substantially harmed their children's education accounts. For example, victim Cronish stated that he was going to have to go into his retirement account to replenish those funds and was going to incur fees and tax consequences. Depletion of education accounts is one of the non-exhaustive lists in the application notes of what can be substantial financial harm. So in this case, the district court had very specific examples, and it noted that in its sentencing hearing that it was looking to the type of harm, the loss of education accounts, delayed retirement, for example. Mr. Farmani argues on behalf of his client that Stratos didn't know who these victims were because he just dealt with Burns. You understand that's his argument? Yes, Your Honor. That's not the argument that was raised on appeal, however. But the foreseeability argument was litigated below. And there the district court found that the victims were indeed foreseeable to Mr. Stratos, although he didn't necessarily know their names. He knew that Mr. Burns was an investment advisor and that these were the funds of his clients. That's why he brought Burns in. Exactly. And Mr. Stratos actually, while he was in jail, pretending to be someone else, talking to Mr. Burns, advised him of the things that he could say to put off his clients, telling him at that point that the Facebook scheme was, in fact, going to lead to Facebook shares eventually. But if he really wanted his money back, he would give it to him, money that Mr. Stratos had already completely spent. Has there been any restitution in this case? Restitution was ordered, Your Honor. I don't believe any of it has been paid. Mr. Stratos has been in prison, and since he spent all of the money that he stole, there really was nothing to — there was very little to — No assets? Well, I take that back, Your Honor. There were a few assets that were forfeited, a couple of cars that were still available. I'm not — I can't recall exactly what the value of those was, but it certainly wouldn't have met the millions of dollars that Mr. Stratos owes. Okay. Was it ever discovered how many total victims there were? I know you just had to show five that had substantial loss, but — Well, victims total? Yes. At least 57. There are 56 victims listed in Attachment A to the PSR, and then if you add Ms. Nicole Murphy as an additional victim, that gets you to 57. There are some other victims that are also listed in Attachment A. It's not clear that the difference in the number of victims that the district court considered all of those to be relevant to the fraud schemes at issue here, so those losses weren't counted for purposes of calculation of the guideline range or for restitution purposes. On the guideline range, I know there was a lot of discussion at the sentencing hearing regarding — I think it's V.V. True — Yes. It was accounted for a good almost $10 million. So the district court's total offense level, I take it, was lower than what PSR had calculated? Yes, Your Honor, because the judge did not consider that loss. But even so, it still got to a guideline range that resulted in a 262-month sentence. So even if you only count the $22 million, approximately $22 million that the court found as losses, in this case, the number is still very high and justifies the sentence that was imposed here. Under the PSR's calculation, 262, I think, ended up being the low end. Do you recall what the range was under the district court's calculation? When the district court sentenced the defendant, the range was 210 to 262 months. So 262 months ended up being the high end. The top of the range? Yes, Your Honor. If there were no questions or any — there was no argument concerning the abuse of position of trust enhancement. However, if the court has any questions about that, I am happy to address it. Other than that, if the court has no additional questions for me, I will simply ask the court to affirm the sentence. It looks like we have no additional questions. Thank you, counsel. Thank you. Thank you. Your Honor, the question you had, there was, in fact, a hedge fund involved in the Facebook scheme and is referenced in supplemental excerpts by the government at 5.05. The — this is what's — I don't know, frankly, whether or not these victims were part of this hedge fund. We don't know that. What we do know is that Mr. Burns ended up selling some Facebook stock later down the line to the hedge fund. So got it from another source and ended up selling it. As far as the communications with Mr. Stratus out of prison, now why would he be defrauding while he's in prison? He's trying to make this Facebook thing work because he was going to get a substantial amount of money from the Facebook. Not only that $11 million that he got initially, but he was going to get another $11.5 million for making the connections. So he was — he was hopeful that he was able to accomplish that. And then, finally, I think you're — Judge Hawkins asked about whether or not there was any restitution made. My understanding, Your Honor, is that I can't — I don't know this for 100 percent certainty, but I think what happened was — Is it in the — is it in the record? It's not in the record, Your Honor. Then we can't consider it. Yes, Your Honor. All right. Thank you very much, counsel, on both sides for your argument in this case. The matter is submitted for decision.
judges: Siler, Hawkins, Nguyen